1

2

3

4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 03, 2023

SEAN F. McAVOY, CLERK

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   TERRY L.,[1]                          No. 1:22-cv-03174-MKD

8              Plaintiff,                 ORDER REVERSING AND
                                          REMANDING DECISION OF
9       v.                                COMMISSIONER

10  KILOLO KIJAKAZI, ACTING              **ECF Nos. 10, 14**
    COMMISSIONER OF SOCIAL
11  SECURITY,

12             Defendant.

13      Before the Court are the parties' briefs.  ECF Nos. 10, 14.  The Court,

14  having reviewed the administrative record and the parties' briefing, is fully

15  informed.  For the reasons discussed below, the Court reverses the Commissioner's

16  decision and remands the case.

17  ─────────────────────

18  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19  identifies them by only their first names and the initial of their last names.  *See*

20  LCivR 5.2(c).

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 16, 2019, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 1, 2017.[2]  Tr. 23, 116, 234-40.  The application was denied initially, and on reconsideration.  Tr. 150-58, 160-66.  Plaintiff appeared before an administrative law judge (ALJ) on July 13, 2021.  Tr. 55-90.  On September 1, 2021, the ALJ denied Plaintiff's claim. Tr. 20-40.

---

[2] Plaintiff previously applied for Title II and Title XVI benefits on November 9, 2004, which was denied initially and on reconsideration, and an ALJ issued an unfavorable decision on August 3, 2007.  Tr. 118.  Plaintiff also applied for Title II and Title XVI benefits on July 11, 2023, which was denied initially and on reconsideration; an ALJ issued an unfavorable decision on February 27, 2014, and Plaintiff appealed the decision, resulting in an affirmation of the ALJ's decision from this Court.  *Id.*

ORDER - 6

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 16, 2019.  Tr. 26.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disk disease, arthritis, bilateral carpal tunnel syndrome, peripheral neuropathy, plantar fasciitis, obesity, hyperlipidemia, depression, and posttraumatic stress disorder.  Tr. 26.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 27.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can do frequent climbing of stairs and ramps, kneeling, crouching, crawling, and stooping, occasional climbing of ladders, ropes, and scaffolds, and frequent bilateral handling.  He should avoid concentrated exposure to hazards.  He can understand, remember and carry out simple instructions; can exercise simple workplace judgment; and can perform work that is learned by on-the-job training beyond a short demonstration lasting up to and including one month. He can respond appropriately to supervision but should not be required to work in close coordination with coworkers where teamwork is required.  He can deal with occasional changes in the work environment and can work in jobs that require no interaction with the general public to perform the work tasks, but that does not preclude a working environment where the public is present.

Tr. 28-29.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work.  Tr. 33.  At step five, the ALJ found that, considering Plaintiff's

ORDER - 7

age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as marker, bench assembler, and inspector and hand packager.  Tr. 34.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  *Id.*

On September 20, 2022, the Appeals Council denied review of the ALJ's decision, Tr. 14-18, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.  Whether the ALJ conducted a proper step-five analysis; and

4.  Whether the ALJ conducted a proper step-two analysis.

ECF No. 10 at 2.

ORDER - 8

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in his consideration of the opinions of Thomas Genthe, Ph.D.; Tony Lee M.D.; and the State agency consultants. ECF No. 10 at 4-12.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)-(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"

ORDER - 9

(including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(3).

ORDER - 10

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 792. However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

### 1. Dr. Genthe

On July 16, 2020, Dr. Genthe, an examining source, conducted a psychological examination on Plaintiff and rendered an opinion on his functioning. Tr. 567-73. Dr. Genthe diagnosed Plaintiff with major depressive disorder, unspecified; post-traumatic stress disorder; cannabis use disorder, mild; stimulant

use disorder (methamphetamines), in sustainer remission; and rule out major

neurocognitive disorder.  Tr. 570.  Dr. Genthe opined Plaintiff has moderate

limitations in his ability to understand, remember, and persist in tasks by following

very short and simple instructions, perform routine tasks without special

supervision, make simple work-related decisions, and ask simple questions or

request assistance; marked limitations in his ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary

tolerances without special supervision, learn new tasks, and be aware of normal

hazards and take appropriate precautions; and severe limitations in his ability to

understand, remember, and persist in tasks by following detailed instructions, adapt

to changes in a routine work setting, communicate and perform effectively in a

work setting, maintain appropriate behavior in a work setting, complete a normal

workday/workweek without interruptions from psychologically based symptoms,

and set realistic goals and plan independently.  Tr. 570.  He opined Plaintiff's

impairments have an overall severity rating of severe; the limitations were

expected to last 12 months with treatment; and vocational training or services

would minimize or eliminate barriers to employment.  Tr. 571.  The ALJ found Dr.

Genthe's opinion was not persuasive.  Tr. 32.

First, the ALJ found Dr. Genthe's opinion contained internally inconsistent

findings.  *Id.*  The more relevant objective evidence and supporting explanations

ORDER - 12

that support a medical opinion, the more persuasive the medical opinion is. 20

C.F.R. § 416.920c(c)(1). The ALJ reasoned Dr. Genthe's opinion that Plaintiff has

severe limitations in his ability to set realistic goals and plan independently is

inconsistent with his opinion that Plaintiff does not need a representative payee,

because Dr. Genthe did not explain how Plaintiff could manage benefits if he

cannot set goals and independently plan how to manage his benefits. Tr. 32.

Plaintiff contends the opinion is not internally inconsistent because an individual

can have a severe limitation in their ability to set goals and plan independently in a

work setting but not need a representative payee. ECF No. 10 at 8-9. Adults are

presumed capable of managing their own funds, and only legally incompetent

adults require a representative payee. *Id.*; https://perma.cc/7GDU-MKRR. A

severe limitation in setting goals and planning independently in a work setting does

not in itself make an individual legally incompetent. The ALJ erred in rejecting

Dr. Genthe's opinion due to this alleged inconsistency.

Second, the ALJ found Dr. Genthe's opinion was not supported by his

examination. Tr. 32. Supportability is one of the most important factors an ALJ

must consider when determining how persuasive a medical opinion is. 20 C.F.R. §

416.920c(b)(2). The more relevant objective evidence and supporting explanations

that support a medical opinion, the more persuasive the medical opinion is. 20

C.F.R. § 416.920c(c)(1). The ALJ found Dr. Genthe's opinion that Plaintiff has

marked, and severe limitations was inconsistent with his own essentially normal examination of Plaintiff.  Tr. 32.  On examination, Plaintiff spoke normally although with excessive detail; he was open, cooperative, and friendly, and understood instructions; Plaintiff's thought content was normal, but his thought processes were tangential and circumstantial; his orientation, perception, and fund of knowledge were normal.  Tr. 572-73.  Plaintiff's memory, concentration, abstract though, insight, and judgment were abnormal.  *Id.*  Plaintiff had "significant difficulties following the conversation."  Tr. 573.  As Dr. Genthe's examination contains more abnormal findings than normal, the ALJ's finding that the exam is "essentially normal" is a mischaracterization of the record.  The ALJ erred in finding that Dr. Genthe's opinion was not supported by a "normal" examination.

Third, the ALJ found Dr. Genthe's opinion was inconsistent with treatment records.  Tr. 32. The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).  The ALJ found Dr. Genthe's opinion was inconsistent with the medical records, which contain very few mental complaints.  Tr. 32.  Plaintiff contends the records the ALJ cited to as evidence of a lack of mental complaints are medical records from appointments in which Plaintiff was seeking care for physical issues, and thus a lack of mental complaints is not indicative of a lack of mental health symptoms.

ORDER - 14

ECF No. 10 at 10-11.  Plaintiff reported anxiety, depression, stress, PTSD symptoms, difficulty concentrating, angry outburst, arguments, thoughts of harming others, memory issues, and energy issues throughout the record.  *Id.* (citing, e.g., Tr. 374, 397, 446, 528, 664, 749).  Defendant contends the ALJ's analysis is supported, because Plaintiff's citations indicate Plaintiff self-reported mental health symptoms, while the records contain minimal objective evidence of such symptoms.  ECF No. 14 at 11.  However, the ALJ found Dr. Genthe's opinion was inconsistent with Plaintiff's "few mental complaints," Tr. 32, while Plaintiff cites to a significant number of complaints of mental health symptoms, ECF No. 10 at 10-11.  The ALJ erred in finding Dr. Genthe's opinion was inconsistent with treatment notes documenting few mental complaints.

On remand, the ALJ is instructed to reconsider Dr. Genthe's opinion and incorporate the opinion into the RFC or give reasons supported by substantial evidence to reject the opinion.

### 2. Dr. Lee

On March 24, 2021, Dr. Lee, a treating provider, rendered an opinion on Plaintiff's functioning.  Tr. 564-66.  Dr. Lee diagnosed Plaintiff with cervical radiculopathy and bilateral carpal tunnel syndrome.  Tr. 564.  Dr. Lee opined Plaintiff needs to lie down for two hours during the day; his conditions are likely to cause pain; working on a continuous basis would not cause Plaintiff's condition to

ORDER - 15

1  deteriorate; Plaintiff would miss four or more days per month if he worked full-

2  time; he can perform light work on a sustained competitive basis; and the

3  limitations have existed since at least January 1, 2017.  Tr. 564-66.  The ALJ found

4  Dr. Lee's opinion was partially persuasive.  Tr. 32.

5         First, the ALJ found Dr. Lee's opinion that Plaintiff would miss four or more

6  days per month was inconsistent with the record.  *Id.*  Consistency is one of the

7  most important factors an ALJ must consider when determining how persuasive a

8  medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more consistent an opinion is

9  with the evidence from other sources, the more persuasive the opinion is.  20

10  C.F.R. § 416.920c(c)(2).  The ALJ stated Dr. Lee's opinion was inconsistent with

11  the record and evidence of high functioning behavior and offers a string of

12  citations without any further explanation.  Tr. 31-32.  Plaintiff contends the cited

13  records do not support the ALJ's analysis.  ECF No. 10 at 7.  The cited records

14  contain complaints from Plaintiff of pain levels as high as nine out of 10, multiple

15  symptoms causing him limitations such as an inability to open jars, and impaired

16  memory.  Tr. 355, 358, 362, 483, 496, 547, 594.  Given the multiple abnormalities

17  documented, and the lack of any explanation as to how these records are allegedly

18  inconsistent with Dr. Lee's opinion, the Court cannot meaningfully review the

19  ALJ's explanation.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir.

20  2015); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Reddick v. Chater*,

1  157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions.

2  He must set forth his own interpretations and explain why they, rather than the

3  doctors' [opinions] are correct.").  On remand, the ALJ is also instructed to

4  reconsider Dr. Lee's opinion and incorporate the opinion into the RFC or give

5  reasons supported by substantial evidence to reject the opinion.

6      *3.  State Agency Consultants*

7      Four State agency consultants rendered administrative medical findings

8  regarding Plaintiff's functioning.  Tr. 124-27, 141-43.  Dr. Tuason found Plaintiff

9  is capable of performing light work, with frequent climbing ramps/stairs, stooping,

10 kneeling, crouching, and crawling; occasional climbing ladders/ramps/scaffolds;

11 constant handling; and he should avoid concentrated exposure to hazards.  Tr. 124-

12 26.  Dr. Staley affirmed Dr. Tuason's findings, with the exception of the

13 manipulative limitation; Dr. Staley found Plaintiff is limited to frequent handling.

14 Tr. 141-43.  Dr. van Dam found Plaintiff has moderate limitations in his ability to

15 interact appropriately with the general public, accept instructions and respond

16 appropriately to criticism from supervisors, and get along with coworkers or peers

17 without distracting them or exhibiting behavioral extremes, and he is otherwise not

18 limited by his mental impairments.  Tr. 126-27.  Dr. Regets affirmed Dr. van

19 Dam's findings.  Tr. 142-43.  The ALJ considered the State agency administrative

20 findings, and found they were persuasive.  Tr. 32.  The ALJ reasoned the findings

ORDER - 17

1  were well-supported by the medical findings and fairly consistent with the record

2  available at the time of the assessments.  *Id.*  The ALJ also reasoned the

3  consultants have knowledge of the Social Security program and supported their

4  findings with evidence from the record.  *Id.*

5        Plaintiff contends the ALJ failed to explain what evidence supported the

6  opinions and how the evidence supports them.  ECF No. 10 at 11.  Statements from

7  State agency consultants are no longer considered opinions; rather, they are

8  considered administrative medical findings.  20 C.F.R. § 416.920c(b)(2); POMS

9  DI 24503.005 (B)(6).  Administrative medical findings are evaluated under the

10  same standard as medical opinions.  20 C.F.R. § 416.920c(b)(2); POMS DI

11  24503.025(E).

12        As Plaintiff contends the ALJ erred in his consideration of the State agency

13  opinions in relation to Dr. Genthe's opinion, and the case is being remanded to

14  reconsider Dr. Genthe's opinion, the ALJ is also instructed to reconsider the State

15  agency opinions.

16  **B. Plaintiff's Symptom Claims**

17        Plaintiff faults the ALJ for failing to rely on reasons that were clear and

18  convincing in discrediting his symptom claims.  ECF No. 10 at 12-18.  An ALJ

19  engages in a two-step analysis to determine whether to discount a claimant's

20  testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 18

"First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 19

1   Factors to be considered in evaluating the intensity, persistence, and limiting

2 effects of a claimant's symptoms include: 1) daily activities; 2) the location,

3 duration, frequency, and intensity of pain or other symptoms; 3) factors that

4 precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

5 side effects of any medication an individual takes or has taken to alleviate pain or

6 other symptoms; 5) treatment, other than medication, an individual receives or has

7 received for relief of pain or other symptoms; 6) any measures other than treatment

8 an individual uses or has used to relieve pain or other symptoms; and 7) any other

9 factors concerning an individual's functional limitations and restrictions due to

10 pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

11 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

12 individual's record," to "determine how symptoms limit ability to perform work-

13 related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14   The ALJ found that Plaintiff's medically determinable impairments could

15 reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

16 statements concerning the intensity, persistence, and limiting effects of his

17 symptoms were not entirely consistent with the evidence.  Tr. 30.

18   The ALJ's evaluation of Plaintiff's symptom claims, and the resulting

19 limitations relies almost entirely on the ALJ's assessment of the medical evidence.

20 Having determined a remand is necessary to readdress the medical source

ORDER - 20

opinions, any reevaluation must necessarily entail a reassessment of Plaintiff's

subjective symptom claims.  Thus, the Court need not reach this issue and on

remand the ALJ must also carefully reevaluate Plaintiff's symptom claims in the

context of the entire record.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

2012) ("Because we remand the case to the ALJ for the reasons stated, we decline

to reach [plaintiff's] alternative ground for remand.").

### C. Step Five

Plaintiff contends the ALJ erred at step five by relying on vocational expert

testimony that was based on unreliable methodology.  ECF No. 10 at 18-20.  At

step five of the sequential evaluation analysis, the burden shifts to the

Commissioner to establish that (1) the claimant is capable of performing other

work; and (2) such work "exists in significant numbers in the national economy."

20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389.  There is no "bright-line rule

for what constitutes a 'significant number' of jobs."  *Beltran*, 700 F.3d at 389.

"There are two ways for the Commissioner to meet the burden of showing that

there is other work in 'significant numbers' in the national economy that claimant

can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-

Vocational Guidelines . . . ."  *Id*.

Plaintiff contends the vocational expert's testimony regarding the number of

full-time jobs available for each of the representative jobs at step five was based on

ORDER - 21

1  a straight average of the number of jobs in each OES category.  Tr. 85-86.  Plaintiff

2  contends the expert's methodology was rejected by the Ninth Circuit, when the

3  court reasoned in *Kilpatrick* that such methodology relies on the improbable

4  assumption that jobs in the same OES group all have the exact same number of

5  jobs in the national economy.  ECF No. 10 at 20 (citing *Kilpatrick v. Kijakazi*, 35

6  F.4th 1187 (9th Cir. 2022).  As the case is being remanded for the ALJ to

7  reconsider the medical opinion evidence and Plaintiff's symptom claims, the ALJ

8  is also instructed to reconsider the step five analysis and call a vocational expert if

9  necessary.

10  **D. Step Two**

11      Plaintiff contends the ALJ erred at step two by failing to identify his

12  malrotation of the intestines condition as a severe impairment.  ECF No. 10 at 20-

13  21.  At step two of the sequential process, the ALJ must determine whether

14  claimant suffers from a "severe" impairment, i.e., one that significantly limits his

15  physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).

16      To establish a severe impairment, the claimant must first demonstrate that

17  the impairment results from anatomical, physiological, or psychological

18  abnormalities that can be shown by medically acceptable clinical or laboratory

19  diagnostic techniques.  20 C.F.R. § 416.921.  In other words, the claimant must

20  establish the existence of the physical or mental impairment through objective

medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable

medical source; the medical impairment cannot be established by the claimant's

statement of symptoms, a diagnosis, or a medical opinion.  *Id.*

An impairment may be found to be not severe when "medical evidence

establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to

work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is

not severe if it does not significantly limit a claimant's physical or mental ability to

do basic work activities; which include walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

understanding, carrying out and remembering simple instructions; use of judgment,

responding appropriately to supervision, coworkers and usual work situations; and

dealing with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-

28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless

claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

---

[3] The Supreme Court upheld the validity of the Commissioner's severity

regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54

(1987).

our normal standard of review to the requirements of step two, [the Court] must

determine whether the ALJ had substantial evidence to find that the medical

evidence clearly established that [Plaintiff] did not have a medically severe

impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).

As the case is being remanded for the ALJ to reconsider the medical opinion

evidence and Plaintiff's symptom claims, the ALJ is also instructed to perform the

five-step analysis anew, including reconsidering step two.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits.

ECF No. 17 at 2-3.

"The decision whether to remand a case for additional evidence, or simply to

award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041,

1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary, for the ALJ to resolve conflicts in the record.  For example, there are conflicting reports about Plaintiff's activities and abilities.  Plaintiff has reported handling chores, fishing, caring for infant grandchildren, walking 1.5 miles daily, and mowing the lawn.  Tr. 31.  In February 2020, Plaintiff completed his function report in connection to his application for benefits, in which he reported he did not take care of anyone.  Tr. 275.  However, at a January 2020 appointment, Plaintiff reported he "spends most of his days

caring for his 6 month old and 1.5 year of grandchildren." Tr. 501. Dr. Lee and

Dr. Genthe's opinions also conflict with the State agency consultants' opinions.

As such, the case is remanded for further proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is not supported by substantial evidence and is not free of harmful

legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Opening Brief, **ECF No. 10**, is **GRANTED**.

2. Defendant's Brief, **ECF No. 14**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

REVERSING and REMANDING the matter to the Commissioner of Social

Security for further proceedings consistent with this recommendation pursuant to

sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE**.

DATED November 3, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 26